```
            UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| FONSO L. WIRES, | : | **CIVIL NO. 3:09-CV-2247** |
| Petitioner | : | (Judge Munley) |
| v. | : | (Magistrate Judge Smyser) |
| B.A. BLEDSOE, WARDEN, | : | |
| Respondent | : | |

## **REPORT AND RECOMMENDATION**

On November 16, 2009, the petitioner, a federal prisoner proceeding *pro se,* filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petitioner claims that the Bureau of Prisons (BOP) has denied him due process by denying him consideration for twelve months confinement in a community corrections center consistent with 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007. Also on November 16, 2009, the petitioner filed a motion for summary judgment and a motion for a preliminary injunction.

On December 11, 2009, the respondent filed a response to the petition, and on December 21, 2009, the petitioner filed a reply.

The petitioner was convicted in the United States District Court for the Southern District of Iowa. *See Doc. 2 at 13-16.* The petitioner was sentenced to a 245-month term of imprisonment. *Id.* The petitioner's projected release date, via Good Conduct Time release, is November 22, 2010. *Doc. 9-2, Decl. of Matthew Rodarmel at ¶3.*

On May 6, 2009, the petitioner's unit team recommended that the petitioner be placed in a residential re-entry center (RRC) for sixty days. *Doc. 9-2 at 55.* However, an official request for a 60-day placement in a RRC has not been forwarded to the Community Corrections Manager. *Doc. 9-2, Decl. of Matthew Rodarmel at 12.*

The petitioner contends that the BOP failed to give any real consideration to transferring him to a RRC for twelve months under the Second Chance Act. He contends that there are

extraordinary grounds for placing him in a RRC for twelve months including his high recidivism rate, that there is a economic recession and he will need time to secure employment and that he is Muslim and there is an atmosphere of distrust toward Muslims in the community. He asks for an immediate transfer to a RRC. *See Doc. 4.*

18 U.S.C. § 3621(b) concerns the place of imprisonment of a federal prisoner and provides that in designating the place of a prisoner's imprisonment the BOP shall consider the following factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

18 U.S.C. § 3624(c) deals with pre-release custody. Prior to the Second Chance Act (effective April 9, 2008), 18 U.S.C. § 3624(c) provided, in pertinent part, that the BOP "shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."

Prior to December of 2002, the BOP took the position that it had discretionary authority to place an inmate in a Community Corrections Center (CCC)[1] for more than the last ten percent of his sentence. *See BOP Program Statement* 7310.04 at page 4 (Dec. 16, 1998) (stating that a CCC meets the definition of a "penal or correctional facility" and, therefore, the BOP "is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last 10 per centum of the term,' or more than six month, if

---

1. The term "residential re-entry center" (RRC) is the term currently used by the BOP for what was formerly termed a CCC.

4

appropriate."). That position was based on 18 U.S.C. § 3621(b). The BOP's position changed, however, in the wake of a December 13, 2002 Memorandum Opinion issued by the Department of Justice's Office of Legal Counsel to the United States Deputy Attorney General (OLC Opinion). The OLC Opinion stated that there is nothing in section 3621(b) that provides the BOP clear authority to place in community confinement an offender who has been sentenced to a term of imprisonment. The OLC Opinion further noted that pursuant to 18 U.S.C. § 3624(c) the authority of the BOP to transfer a prisoner to a CCC is clearly limited to a period "not to exceed six months, or the last 10 per centum of the term to be served." The OLC Opinion concluded that the BOP's practice of placing some inmates in CCCs at the outset of their sentences and transferring other inmates to CCCs during the course of their sentences before the inmates reach the last ten percent of their sentences is not lawful.

Following the OLC Opinion, the BOP enacted regulations that provided that the "Bureau designates inmates to community confinement only as part of the pre-release custody and

5

programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20(a). The regulations also provided that the "Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). Further, the regulations provided that the Bureau "may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A), or shock incarceration program (18 U.S.C. 4046(c))." 28 C.F.R. § 570.21(b). The regulations provided that they are a "categorical exercise of discretion for designating inmates to community confinement." 28 C.F.R. § 570.20(a).

In *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 244 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that the BOP's regulations regarding

6

placement in community confinement were invalid because the regulations do not allow for full consideration of the factors enumerated in 18 U.S.C. § 3621(b). The Third Circuit indicated that the BOP does have discretion to refuse to place an inmate in community confinement but that the exercise of that discretion must be based on the § 3621(b) factors. *Id.* at 249.

The Second Chance Act, effective April 9, 2008, amended 18 U.S.C. § 3624(c). 18 U.S.C. § 3624(c) now provides, in pertinent part:

> (1) In general. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
> (2) Home confinement authority. The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> . . .

7

>                (6) Issuance of regulations.  The Director
>       of the Bureau of Prisons shall issue
>       regulations pursuant to this subsection not
>       later than 90 days after the date of the
>       enactment of the Second Chance Act of 2007
>       [enacted April 9, 2008], which shall ensure
>       that placement in a community correctional
>       facility by the Bureau of Prisons is-
>             (A) conducted in a manner consistent with
>             section 3621(b) of this title [18 USCS
>             § 3621(b)];
>             (B) determined on an individual basis; and
>             (C) of sufficient duration to provide the
>             greatest likelihood of successful
>             reintegration into the community.

On April 14, 2008, Joyce K. Conley, the Assistant Director of the Correctional Programs Division of the BOP, and Kathleen M. Kenney, Assistant Director/General Counsel of the BOP, issued a "Memorandum for Chief Executive Officers" regarding pre-release residential re-entry center placements following the Second Chance Act. *Doc. 9-2.* The memo *inter alia* summarized the relevant statutory changes made by the Second Chance Act and indicated that the BOP's categorical timeframe limitations in its regulations on pre-release community confinement are no longer applicable and shall not be followed, that certain adjustments are necessary to the provisions in Program Statement 7310.04, that inmates must be reviewed for

8

pre-release RRC placements 17-19 months before their projected release dates, that each inmate's pre-release RRC decision must be analyzed and supported under the factors set forth in 18 U.S.C. § 3621(b) and that staff must approach each inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement. *Id.* The memo also includes a section that provides:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

*Id.*

The BOP subsequently issued regulations, effective October 21, 2008, setting forth procedures for designating inmates to pre-release community confinement or home detention. *See* 28 C.F.R. §§ 570.20 - 570.22. The regulations do not include the requirement in the April 14, 2008 memo for approval

9

from the Regional Director for pre-release RRC placement beyond six months.[2]

The respondent contends that the court should deny the petition in this case because the petitioner was properly considered for RRC placement and he is not entitled to such placement for longer than the 60 days recommended.[3]

Judge Rambo recently addressed the merits of a habeas petition challenging the application of the Second Chance Act in light of the April 14, 2008 and November 14, 2008 memoranda. She reasoned as follows:

> . . . Respondent contends that Krueger has had
> the individualized determination he is entitled
> to under the Second Chance Act, and that he is
> simply unhappy with the fact that the unit team

---

[2]. Although not a part of the record in this case, on November 14, 2008, the BOP issued another memorandum reiterating the position that an RRC placement beyond six months should only occur when there are "unusual or extraordinary circumstances" justifying such placement and the Regional Director concurs. *See Krueger v. Martinez,* 1:09-CV-01116, slip op. at 6 (M.D.Pa. Sept. 3, 2009)(Rambo, J.).

[3]. The respondent does not contend that the petition should be dismissed as premature since the recommendation for a 60-day RRC placement has not been made final. Accordingly, we will address the merits of the petition.

responsible for his review determined he would benefit from a 5-6 month RRC placement rather than a longer placement. Respondent also argues that neither the April 14th nor the November 14th memoranda impermissibly constrains BOP discretion because these memoranda permit placement for up to 12 months with Regional Director approval.

At first blush Respondent's reasoning is tempting. Nothing restricts the BOP from conferring discretion to various persons within the hierarchy of the institution. However, the Second Chance Act unequivocally requires that the BOP make an individualized determination of an inmate's needs in reaching its conclusion concerning the duration of a RRC placement. *See* 18 U.S.C. § 3624(c). According to the April and November memoranda, a BOP unit team is the one charged with making this recommendation, however, this team's discretion is limited to recommending a placement of no more than six months; anything more than that can only be recommended with the consent of the Regional Director. While it may literally be true that nothing in the April 14th or November 14th memoranda constrains the BOP's discretion, institutional inertia is a powerful force; by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less, the BOP has functionally placed a lid on the discretion that it wants its staff to exercise. In other words, while staff have absolute discretion to recommend RRC placement for 0-6 months, if they want to recommend a placement of a longer duration they must be able to demonstrate "unusual or extraordinary circumstances justifying" the recommendation. This language effectively chills staff discretion because staff are aware of the institutional preference

11

for a RRC placement of six months or less, a preference that is contrary to the apparent purpose of the Second Chance Act.

It is clear to this court that by increasing the maximum placement period from six months to twelve months, and requiring the BOP to ensure that placements are long enough to provide "the greatest likelihood of successful reintegration," Congress intended that each inmate be considered for the full twelve month period of RRC placement with the only limitation being the application of the § 3621(b) factors. *See* 18 U.S.C. § 3624(c)(1),(6). The BOP's memoranda add additional hurdles that find no support in the text of the Second Chance Act. While it may be true that any given prisoner need not be placed in a RRC for longer than six months, it is not universally true that every prisoner will benefit from the same limitations. By depriving the initial decision maker of the ability to recommend placement unfettered by a presumptive six month cap, the BOP significantly reduces the possibility of a truly individualized review that objectively determines the duration required "to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). Accordingly, because the duration of Krueger's RRC placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in deciding that Krueger's placement would be for five to six months.

To be clear, the court is not directing the BOP to place Krueger in a RRC for the period of twelve months. Although Krueger asks this court to do so, the court is not in a position to make a judgment about the length of

12

> time necessary for the greatest likelihood of
> Krueger's successful reintegration into the
> community. This task is best left to the
> discretion of the BOP. However, by instructing
> staff that pre-release placement needs can
> usually be accommodated by a placement of six
> months or less, and by denying staff the
> discretion to recommend a placement longer than
> six months without advance written approval
> from the Regional Director, the memoranda
> constrain the discretion necessary to make this
> determination unfettered by an arbitrary
> ceiling. It is this ceiling that taints the
> BOP's decision to place Krueger in a RRC for
> only five to six months. The court cannot be
> entirely sure that the BOP made an
> individualized determination that this was a
> sufficient length of time for Krueger despite
> the six-month presumption contained in the
> memoranda or because of that presumption. The
> former is consistent with the BOP's legitimate
> exercise of discretion, the latter is an abuse
> of discretion because a presumptive six month
> cap finds no support in the text of the Second
> Chance Act. Accordingly, the court will grant a
> writ of habeas corpus directing the BOP to
> reconsider the length of Krueger's RRC
> placement taking into consideration the
> requirements of the Second Chance Act and the
> factors outlined in 18 U.S.C. § 3621(b) and
> disregarding the limitations imposed by either
> the April 14, 2008 or November 14, 2008
> memoranda.

*Krueger v. Martinez,* 1:09-CV-01116 (M.D.Pa. Sept. 3, 2009)(Rambo, J.)(internal record citation and footnote omitted). Judge Munley, however, has addressed the merits of

13

a habeas petition challenging the application of the Second Chance Act and has reached the opposition conclusion. *See Torres v. Martinez,* 3:09-CV-01070 (M.D.Pa. Aug. 12, 2009)(Munley, J.). In Torres, Judge Munley indicated that the petition would be dismissed because the petitioner in that case failed to exhaust administrative remedies. *Id.* at 10. However, in the interest of completeness, Judge Munley went on to address the merits of the petition. *Id.* He stated and reasoned as follows:

> Torres asserts that the April 14, 2008 Bureau of Prison Memorandum imposes a policy of categoric pre-release placement for a time of six months or less because placement for a period greater than six months requires approval by a Bureau of Prisons Regional Director. The petitioner states that denying prison staff the discretion to recommend a placement longer than six months without advance written approval by a Regional Director is inconsistent with 18 U.S.C. 3624(c), as interpreted in Strong [v. Schultz], 599 F.Supp.2d at 561-62.
>
> In Strong, the court found that the policies elaborated in the April 14, 2008 Memorandum were in violation of regulatory guideposts included in the Second Chance Act's amendments to 18 U.S.C. § 3624(c). 599 F.Supp.2d at 563. It held that the "[m]emorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest

14

likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)." Id.

There is evidence that the April 14, 2008 Memorandum has been replaced with formal federal regulations applicable to the petitioner. Id. at 562-63. Interim regulations passed on October 21, 2008 (73 Fed.Reg. 62440) state that "[i]nmates may be designated to community confinement as a condition of prerelease custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). Moreover, "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R.§ 570.22 (Oct. 22, 2008).

The court finds that the Bureau of Prisons did not violate the Second Chance Act when it determined that Petitioner Torres would be placed in pre-release custody for six months, regardless of whether it followed the April 18, 2008 Memorandum or the October 2008 Regulations when it reviewed the petitioner's case. In doing so, the court declines to extend the reasoning of Strong to the petition before us. Unlike Strong, the petitioner has provided no reason why he requires more than six months of pre-release placement, other than that it would give him the greatest likelihood of successful reintegration.

The evidence indicates that the petitioner's unit team at LCSI Allenwood applied the guidelines set forth in the Second

15

> Chance Act. Bureau of Prisons staff members
> considered the factors of 18 U.S.C. § 3621(b)
> when they evaluated Petitioner Torres in
> December 2008. There is no evidence that the
> petitioner was categorically granted less than
> six months placement in an RRC. He was
> evaluated on an individual basis, as 18 U.S.C.
> §3624(c) requires. The court will not override
> the judgment of Bureau of Prisons staff in
> determining the time necessary for Petitioner
> Torres's successful reintegration, since these
> decisions are generally best left to the
> discretion of prison officials. LSCI Allenwood
> staff did not disregard important personal
> circumstances that would have warranted
> consideration for longer placement in pre-
> release custody. As such, the court finds that
> Petitioner Torres has offered no legal basis to
> support a reconsideration of his RRC placement
> date. He merely disagrees with the recommended
> length of RRC placement. Those are not grounds
> for issuing a writ of habeas corpus.

*Id.* at 10-13 (footnote and internal citations omitted).

The petitioner cites *Krueger* in passing in his reply. However, he has not squarely raised the issue of the April 14, 2008 and November 14, 2008 BOP memoranda. Moreover, since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond

16

six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director.

The petitioner was considered for placement in a RRC. Thus, he was not denied due process. Further, there is no basis to infer in the instant case that the petitioner did not receive the individualized consideration for RRC placement required by the Second Chance Act. That the petitioner disagrees with the recommendation for a 60-day placement is not a basis to issue a writ of habeas corpus. Accordingly, we will recommend that the petition be denied.[4] Since we are recommending that the petition be denied, we will also recommend that the petitioner's motions for a preliminary injunction and for summary judgment be denied.

Based on the foregoing, it is recommended that petition for a writ of habeas corpus be denied, that the petitioner's motion (doc. 2) for a preliminary injunction be denied, that

---

4. In his reply, the petitioner requests release from the Special Management Unit to the general population. Since that relief was not requested in the petition we do not consider that request.

17

the petitioner's motion (doc. 3) for summary judgment be denied and that the case file be closed.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated: December 23, 2009.